**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION**

| | |
|---|---|
| HENRIETTA DIXON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **CIVIL ACTION NO. 3:07cv333-TFM** |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Following administrative denial of her applications for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401 *et seq.*, and Title XVI of the Act, 42 U.S.C. §§ 1381 *et seq.*, Henrietta Dixon ("Dixon") received a requested hearing before an administrative law judge ("ALJ") who rendered an unfavorable decision.  When the Appeals Council rejected review, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner").  Judicial review proceeds pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and 28 U.S.C. § 636 (c), and for reasons herein explained, the court AFFIRMS THE COMMISSIONER'S decision.

**I.   STANDARD OF REVIEW**

Judicial review of the Commissioner's decision to deny benefits is limited.   The court cannot conduct a *de novo* review or substitute its own judgment for that of the Commissioner. *Walden v. Schweiker*, 672 F.2d 835 (11th Cir. 1982). This court must find the Commissioner's decision conclusive "if it is supported by substantial evidence and the

correct legal standards were applied." *Kelley v. Apfel*, 185 F. 3d 1211, 1213 (11th Cir. 1999), citing *Graham v. Apfel*, 129 F. 3d 1420, 1422 (11th Cir. 1997).

Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560.

The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994).

## II. ADMINISTRATIVE FINDINGS

Dixon, age 55 at the time of the hearing, has a seventh grade education. Dixon's past

relevant work was employment as a cook's helper for 33 years. She did not engage in substantial gainful work activity at any time relevant to her application period. Her disability application documents claim she became disabled on September 30, 2002 due to back, knee, leg and stomach injuries. The ALJ found Dixon was severely impaired by degenerative joint disease, osteoarthritis, obesity, and a hernia repair. The administrative decision adopted the residual functional capacity ("RFC") findings of Dr. Lewis Slavich, a consulting physician, and rated Dixon's pain level as "moderate or less." The ALJ concluded Dixon did not have any impairment or combination of impairments that meet or equal in severity any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ found Dixon could perform her past work as a cook's helper, and was therefore not entitled to disability benefits under the Act.

### III.  ISSUES

Dixon raises two issues for judicial review:[1]

1. Whether the ALJ erred in finding Dixon was capable of performing her past relevant work given his RFC findings.

2. Whether the ALJ erred in discounting the opinion of Dixon's treating physician.

### IV.  DISCUSSION

**1.     The ALJ's finding that Dixon could return to her previous work was**

---

[1] *See* Plaintiff's Brief ("Pl. Br.") at 3 (Doc. #13, filed August 13, 2007) *and* Order filed April 19, 2007 (Doc. #4) (directing Plaintiff to a brief in support of her claim(s) and to include in her brief a section titled "Statement of the Issues" which "shall state in a concise, and specific manner each issue which the plaintiff presents to the court for resolution").

**harmless error.**

Dixon argues the ALJ erred by finding her able to return to her past relevant work as a cook's helper. The Commissioner concedes error on this point, but argues the error was harmless because a vocational expert identified jobs which matched her abilities as determined by the ALJ.

The ALJ found Dixon was credible in that she is precluded from some, but not all competitive employment.[2] He found her "impairments have waxed and wanted," and noted a November, 2002 release by her physical therapist "for a return to full functional activities and to her previous work."[3] The ALJ adopted the findings of consulting physician Dr. Lewis Slavich as to Dixon's RFC.[4] The specific findings of Dixon's physical ability were she "retained the capacity to lift and carry 5 pounds constantly, 15 pounds frequently and 25 pounds occasionally. Ms. Dixon could sit, stand, or walk a total of 6 hours each in an 8-hour workday."[5] Dr. Slavich's findings also concluded Dixon could "constantly" push/pull with her arms and legs, climb, balance, stoop, kneel, crouch, crawl, handle, finger/feel, talk, hear, and reach overhead.[6] Dr. Slavich's summary of his examination stated he could not objectively "see any significant impairments in [Dixon] from a muscoloskeletal point of view

---

[2] R. at 19.

[3] R. at 18.

[4] R. at 18, 20, 170-172.

[5] R. at 18.

[6] R. at 18, 171.

that would preclude her from work related activities . . . ."[7]

During the administrative hearing, the vocational expert categorized Dixon's past work as a cook's helper as unskilled work at the medium exertional level.[8] Dixon's abilities, as determined by Dr. Slavich and the ALJ, do not meet the criteria for a "medium level of exertional activity," which entails lifting up to 50 pounds, and frequent lifting or carrying up to 25 pounds.[9] The light work level is suited to persons who can lift "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." *See* 20 C.F.R. § 404.1567(b). Therefore, the ALJ erred in concluding Dixon's physical abilities would permit her to resume the medium-level tasks required in her past position as a cook's helper.

The concession of error by the Commissioner does not warrant an automatic reversal. The vocational expert identified other occupations compatible with Dixon's actual RFC. Although the vocational expert opined an individual of Dixon's characteristics and RFC, as determined by Dr. Slavich, could perform Dixon's past relevant work, the ALJ asked whether alternative jobs at different exertional levels existed in the national economy.[10] The hearing transcript shows the vocational expert listed caterer helper (light work/semi-skilled); garment sorter (light work/unskilled); and surveillance system monitor (sedentary

---

[7]R. at 169.

[8]R. at 218.

[9]Def. Br. at11.

[10]R. st 218.

work/unskilled).[11]  Dixon's representative questioned the vocational expert about her suitability for these occupations, given her education level and claimed physical restrictions.[12]  The vocational expert stated surveillance monitor was within the range of Dixon's abilities, but the physical limitations could have a negative impact on her ability to work as a garment sorter.[13]  The physical limitations stated by Dixon's representative were not included in Dr. Slavich's RFC report, as they were based on Dixon's uncredited claims, and not adopted by the ALJ.  *See Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005) ("[C]redibility determinations are the province of the ALJ.") Therefore, employment as a garment sorter remains a valid occupation for Dixon's RFC, as it was withing Dixon's abilities as determined by the ALJ.

The record shows the ALJ erred in finding Dixon could return to her past relevant work, but it also supports the Commissioner's argument that Dixon could successfully perform light work.  Thus, the record contains substantial evidence to support the ALJ's finding of non-disability in Dixon's case and the Court affirms the ALJ's ultimate conclusion that she is not disabled.

    **2.**    <u>**The ALJ properly evaluated the treating physician's opinion.**</u>

Dixon argues the ALJ failed to properly evaluate the opinion of her treating psychiatrist, Dr. James Zumstein.  The Commissioner responds the ALJ's decision was

---

[11] R. at 218, 220.

[12] R. at 221.

[13] R. at 221-22.

supported by opinions and medical evidence submitted by other treating and consulting physicians.

Dr. James Zumstein's treatment notes between August, 2001 and June, 2002, reference Dixon's hernia surgery, history of hypertension and hepatitis C, but do not mention any back pain.[14] Dr. Zumstein referred Dixon to Dr. Thomas Bernard for evaluation of back pain on September 30, 2002.[15] Dr. Bernard found advanced degenerative changes throughout the lumbar compartment and referred Dixon for physical therapy. He recommended she take a "few weeks off of work to try to get her back problem resolved," with reassessment in three weeks. Dr. Bernard noted he discussed with Dixon the difficulty of qualifying for disability and encouraged her to remain gainfully employed.[16] One month later, Dr. Bernard stated he was without sufficient "information or objective reason" to declare Dixon unable to work.[17] In November, 2002, Dixon successfully completed a course of physical therapy by meeting the short and long term goals established by her physical therapist.[18] She deferred further treatment and was rated as able to return to previous functional activities and work.[19]

Dr. Zumstein's treatment notes from October 9, 2002, show Dixon reported her course

---

[14] R. at 114-120.

[15] R. at 105, 106.

[16] R. at 123.

[17] R. at 122.

[18] R. at 128, 147.

[19] R. at 128.

of physical therapy, although judged successful by the physical therapist, had not "helped her very much."[20] This report from Dixon led Dr. Zumstein to issue a letter stating Dixon was unable to work for an indefinite period of time due to severe degenerative disc disease.[21] Dr. Zumstein repeated his conclusions of Dixon's disability by completing a Medical Source Statement on May 22, 2003.[22] Weeks later, Dixon told Dr. Bernard that she was unable to work. Dr. Bernard's examination found degenerative changes, but he could not objectively find Dixon unable to work.[23] An examination by Dr. Ivan Slavich in October, 2004 showed additional doubt of Dixon's disability due to back pain, as Dr. Slavich wrote he "objectively . . . cannot see any significant impairments in her from a muscoloskeletal point of view that would preclude her from work related activities such as sitting, standing, walking, lifting carrying, handling objects." Rather, Dr. Slavich found Dixon's "significant impairments" were non-physical factors such as lack of a driver's license and educational level.[24]

A treating physician's opinion "must be given substantial or considerable weight unless 'good cause' is shown to the contrary.'" *Phillips v. Barnhart,* 357 F.3d 1232, 1240 (11th Cir. 2004), citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). "Good cause" is present where the "(1) treating physician's opinion was not bolstered by the

---

[20]R. at 105.

[21]R. at 104.

[22]R. at 161-62.

[23]R. at 122.

[24]R. at 169.

evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* at 1241, citing *Lewis.* When assessing medical evidence, an "ALJ [is] required to state with particularity the weight [given] the different medical opinions and the reasons therefor." *Sharfarz v. Bowen,* 825 F.2d 278, 279 (11th Cir.1987) (per curiam). Social security regulations require an ALJ evaluating medical opinion evidence to consider a variety of factors, including the examining and treatment relationships, the specialization of the person giving the opinion, and how well the record supports the opinion in question. *See* 20 C.F.R. § 404.1527(d)(1)-(6). "The weighing of evidence is a function of the factfinder, not of the district court. The question is not whether substantial evidence supports a finding made by the district court but whether substantial evidence supports a finding made by the Secretary." *Graham v. Bowen,* 790 F.2d 1572, 1575 (11th Cir. 1986).

The ALJ rejected Dr. Zumstein's evaluation of Dixon's ability to work due to the strong contrast between his opinion and those of Dr. Bernard (treating orthopedist) and Dr. Slavich (independent consultant).[25] Special attention was given to the fact of Dixon's successful completion of physical therapy, with release to full functional activities, in contrast to Dr. Zumstein's conclusions of a very restricted functional capacity.[26] The ALJ noted Dixon's referral to Dr. Slavich as a means of accurately assessing the mixed medical record in her case. Dr. Zumstein's opinion of Dixon's back pain and resulting limitations

---

[25]R. at 18-19.

[26]R. at 18.

contradicted the opinion of her treating orthopedist, Dr. Bernard. Thus, Dr. Zumstein's conclusions regarding Dixon's true level of back pain were not supported by medical evidence. *Phillips* at 1240. In addition, the Medical Source Statement completed by Dr. Zumstein in May, 2003 is a check-type form which lacks narrative or analysis of the medical conditions at issue. As the opinion was one not supported by objective medical findings, or detailing any physical problems as could be expected in a medical report, it was "conclusory," and properly discounted by the ALJ. *Id.* Further, Dr. Zumstein's opinions of Dixon's inability to work constitutes a legal conclusion by the physician, as opposed to an objective medical finding to be weighed in a disability determination.[27] *Lewis,* 125 F.3d. at 1440.

The court finds the ALJ did not err in his treatment of Dr. Zumstein's opinion regarding Dixon's inability to engage in gainful employment, and substantial evidence in the record supported his decision to credit the opinion and RFC findings by Dr. Slavich, an independent medical consultant.

## V.  CONCLUSION

Pursuant to the findings and conclusions detailed in this *Memorandum Opinion*, the court concludes that the ALJ's non-disability determination is supported by substantial evidence and proper application of the law. It is, therefore, **ORDERED** that the decision of the Commissioner is **AFFIRMED.**  A separate judgment is entered herewith.

---

[27]R. at 104, 161-62.

Done this 25th day of September, 2007.

/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE